JAMES SLATTERY, an Infant, by JOHN SLATTERY, His Guardian ad Litem, Respondent, v. HERBSTONE REALTY COMPANY, Appellant.

Nuisance — maintenance of apartment house — when boy injured while passing through room in cellar of apartment house by striking eye against valve spindle on water pipe may not recover on theory of nuisance.

1. The owner of an apartment house has a legal right to maintain the same for all the purposes for which the building was erected, provided that its use and enjoyment of the structure is reasonable and non-prejudicial to the rights of others lawfully upon the premises. Whether or not the use and enjoyment of one's premises is reasonable or prejudicial to the rights of others as matter of law or of fact, is dependent upon the evidence developed in each case bearing upon the locality, the particular surroundings, the status of the complaining party and the degree of danger to be apprehended.

2. Where a boy, while passing through a room in the cellar of an apartment house, is injured by striking his eye against the unprotected spindle of a valve on a water pipe located in proximity to a window which gave light to the room and ten or eleven inches from the wall, he cannot recover for the injury on the theory of nuisance. The presence of the water pipe and the spindle thereon in the cellar of the apartment house was not such a fixture as might reasonably be anticipated to be a source of danger to a person passing through the room where the same was located or as likely to result in injury to one lawfully on the premises.

*Slattery v. Herbstone Realty Co.*, 198 App. Div. 945, reversed.

(Argued May 8, 1922; decided May 31, 1922.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered August 18, 1921, affirming a judgment in favor of plaintiff entered upon a verdict.

*Frederick J. Flynn* and *Alfred W. Andrews* for appellant. The defendant was not liable for constructing or maintaining a nuisance and the trial court erred in submitting the case to the jury. (*Hickok* v. *Auburn L., H. & P.*

Co., 200 N. Y. 464; *Heskell* v. *Auburn L., H. & P. Co.,*
209 N. Y. 86; *Martin* v. *Pettit,* 117 N. Y. 118; *Melker*
v. *City of New York,* 190 N. Y. 481; *Edwards* v. *N. Y.
& H. R. R. Co.,* 98 N. Y. 245; *Timlin* v. *Standard Oil
Co.,* 126 N. Y. 514; *Junkermann* v. *Tilyou Realty Co.,*
213 N. Y. 404; *Uggla* v. *Brokaw,* 117 App. Div. 585;
*Cochrin* v. *Sess,* 168 N. Y. 372; *Herman* v. *City of Buffalo,*
214 N. Y. 316.)

*Benjamin Reass* and *Lawrence J. McGoldrick* for
respondent.   The testimony convincingly established that
the defendant maintained a dangerous nuisance. (*Hicks*
v. *Smith,* 158 N. Y. 301; *Patten* v. *Bartlett,* 49 L. R. A.
[N. S.] 1120; *Heegh* v. *Licht,* 80 N. Y. 579; *Hart* v.
*Grennell,* 122 N. Y. 371; *Larkin* v. *O'Neill,* 119 N. Y.
221; *Dubois* v. *City of Kingston,* 102 N. Y. 219.)

HOGAN, J.   The defendant is the owner of two apart-
ment houses in the city of New York.   The buildings
join through a large double courtyard.   The father of
the infant plaintiff, together with the members of his
family, resided in the apartment house, No. 435 Fort
Washington avenue, of which building the father was
janitor.   The other apartment house, No. 427, is an
elevator apartment house consisting of six floors accom-
modating six families on each floor.   The entrance to the
house was through a hall which led to elevators operated
for the use of tenants, occupants of the various apartments,
and their guests or persons having business with the
tenants.   The janitor of the apartment house prior to
October 15th left the employ of defendant, and the father
of the infant plaintiff had been employed by defendant
to take charge temporarily of the apartment house,
No. 427.   On October 19th the infant plaintiff sustained
personal injuries on the premises in the manner hereafter
stated for which a recovery was had.

The particular place where the accident occurred and

the circumstances surrounding the same have an important bearing upon the question of liability of defendant. Below the first floor of the apartment building is a basement or cellar where the heating plant is installed and dumbwaiters located used to convey goods delivered by tradesmen for the tenants and to remove refuse from the various apartments. A flight of stairs led from the sidewalk to the basement. To reach the point where the infant plaintiff was injured it was necessary for one to pass down the stairway, enter the basement, then proceed in a northerly direction a distance of about twenty feet, thence through a passageway leading into the cellar which was divided into several separate rooms, in one of which the accident occurred.

That particular room was somewhat irregular in shape, being about twenty feet in length, varying in width from eight and one-half feet to twelve feet. A window opened from the easterly wall of that room into the courtyard and supplied daylight to the room. Some ten inches from the southerly side of the window a water pipe extended perpendicularly from the cellar floor through the ceiling of the room and the building from which a supply of water was supplied to certain apartments. The flow of water through the pipe was regulated by a metal valve attached to the pipe some thirty inches above the floor of the cellar. The valve extended at right angles in a westerly direction from the pipe some few inches and as located was eleven or twelve inches from the easterly wall, and seven feet and upwards from the westerly wall of the room, which intervening space was unobstructed. Some time prior to the date of the accident the wheel or handle of the valve had been removed and the spindle upon which the same fitted was exposed.

On the day of the accident the father of the infant plaintiff was engaged in some work on the fifth floor of the building in apartment No. 55. Along towards three o'clock he went over to the adjoining apartment

house where he resided and sent his son, the infant plaintiff, to a hardware store to procure two dozen curtain pins and a small piece of pipe for use in apartment No. 55, to which he told his son, as he testified, to bring the articles. The son denied the latter statement while admitting his father told him he was working in one of the upper apartments. The son started from his home to do the errand, and went to the hardware store a short distance away. He was absent for an hour or upward. Upon his return he entered the building through the basement, proceeded along the course heretofore described where the water pipe is located, thence to the corner of the room where a dumbwaiter was located and then turned about towards the location of the pipe, which he stated he did not observe though he did notice the window adjacent to the same and the room was fairly ·light. Passing along with the package of curtain pins in his right hand and the piece of pipe in his left hand, he dropped the piece of pipe, stooped to pick it up, and, as he was raising his head, he struck his eye against the valve or something and as a result thereof lost his eye and sustained other injuries.

From a judgment entered upon a verdict for plaintiff, affirmed by the Appellate Division, two justices dissenting, defendant appealed to this court.

Upon the trial of the action, as well as in the presentation of the case on appeal, counsel for plaintiff argued that defendant's liability to respond in damages is based upon the fact that it maintained a nuisance and as a result thereof the infant plaintiff was injured. The trial justice submitted to the jury the liability of defendant arising from the maintainance of a private nuisance, leaving to the jury a determination of that question from the facts developed upon the trial. To the submission of that question to the jury counsel for defendant duly excepted.

That the defendant as owner of the apartment house'

had a legal right to maintain the same for all the purposes
for which the building was erected, provided that its
use and enjoyment of the structure was reasonable and
non-prejudicial to the rights of others lawfully upon the
premises, is incontrovertible.   Whether or not the use
and enjoyment of one's premises is reasonable or preju-
dicial to the rights of others as matter of law or of fact,
is dependent upon the evidence developed in each case
bearing upon the locality, the particular surroundings, the
status of the complaining party and the degree of danger
to be apprehended.   A consideration of the evidence
adduced upon the trial, an excerpt of which has been given,
together with a few additional items of evidence to be
referred to, may be summarized as follows: The apart-
ment house of defendant was erected upon a plan generally
adopted in the city of New York.   The basement of the
building differs little if any from the basements of even
more pretentious buildings.   Upon the trial of the action
counsel for plaintiff disclaimed any attempt to establish
that the construction of the building or the location of any
fixtures or appliances therein were placed or constructed
in violation of any state or local statute, or ordinance.
That pipes for the flow of hot and cold water, gas,
heat and sewage disposal are inclosed in building or
partition walls above the basement or cellar, while
exposed in the cellar, is a matter of common knowledge
Necessarily, therefore, the location of pipes in the basement
or cellar of a building is dependent upon the location of
the same upon the floor above.   The ordinary observer
about to enter the basement or cellar of a building antici-
pates the presence of such fixtures, realizing that such
appliances are essential to the maintenance of every
dwelling or apartment.   The pipe in question supplied
water to the apartments above the basement, and a
necessary adjunct to the pipe was a valve for the purpose
of control of the flow of the water.   The location of the
pipe was in proximity to a window which furnished light

to the room and some ten or eleven inches from a wall running in a northerly direction. Upon the assumption that the wheel ordinarily used for turning the valve was missing, leaving the spindle exposed, the fixture has been determined to be a nuisance. In support of such conclusion it is said that in May, 1917, a boy stumbled over the valve. The circumstances connected with that incident were not detailed and the fact had no material bearing upon the question of an unreasonable maintenance of the fixture. On the other hand, the evidence discloses that forty or fifty people for the purpose of delivering to tenants of the building supplies daily pass through the basement and cellar to deliver such goods by the dumbwaiter; many of them pass through the room where the infant plaintiff was injured, and so far as the record discloses, not one of them encountered difficulty in passing in and out in safety. In the instant case the part of the basement into which the infant plaintiff ventured was ample in dimensions to enable him to avoid contact with the pipe or valve. The room was fairly lighted through the window located nearby the pipe. Why the infant plaintiff entered the basement is not very satisfactorily shown. He testified he was looking for his father. His father had been employed there but a few days and, according to his testimony, he directed the boy to bring the articles he was commissioned to purchase to him in apartment No. 55 or, according to the testimony of the boy, he was told by his father that he was working in one of the upper apartments. With such information it is not clear how he could anticipate that he would find his father in the cellar or basement or to pass beyond the door to observe that his father was not there. Even had he conceived the idea that he would send the articles to his father upon a dumbwaiter that conveyance was located as he observed it on the opposite side of the room from the location of the pipe. A review of the record leads us to the conclusion that the presence of the

water pipe and the spindle thereon in the cellar of the apartment house was not such a fixture as might reasonably be anticipated to be a source of danger to a person passing through the room where the same was located, or as likely to result in injury to one lawfully on the premises. Such conclusion renders unnecessary consideration of other questions presented upon the argument of the appeal.

The judgments below should be reversed and the complaint dismissed, with costs in all courts.

HISCOCK, Ch. J., CARDOZO, POUND, McLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Judgments reversed, etc.