MICHAEL BLESSINGTON, as Administrator of the Estate of MICHAEL BLESSINGTON, JR., Deceased, Plaintiff, *v.* McCRORY STORES CORPORATION et al., Defendants, and M. A. HENRY Co., INC., Defendant and Third-Party Plaintiff. E. I. Du PONT DE NEMOURS & COMPANY, Third-Party Defendant.

Supreme Court, Special Term, Queens County, February 17, 1950.

*William M. Blake, Jr.,* and *Thomas F. Frawley* for plaintiff.

*Galli & Locker (Bondy & Schloss* of counsel), for E. F. Timme & Son and another, defendants.

*Richards W. Hannah* for McCrory Stores Corporation, defendant.

*Michael A. Hayes* for M. A. Henry Co., Inc., defendant and third-party plaintiff.

*Cravath, Swaine & Moore* for third-party defendant.

DALY, J. In an action to recover damages for conscious pain suffered by plaintiff's intestate, a boy seven years of age, prior to his death on March 28, 1945, as a result of injuries which he sustained on December 27, 1944, and which are alleged to have been caused when a so-called " Gene Autry " suit he was wearing caught fire, this court granted the plaintiff leave to amend his complaint by adding a third cause of action (*Blessington* v. *McCrory Stores Corp.,* 195 Misc. 710).

The first cause of action of said amended complaint is solely against the vendor of the suit — McCrory Stores Corporation — for breach of implied warranty. The second cause of action charges said vendor, M. A. Henry Co. Inc., the manufacturer of the suit, Woonsocket Falls Mill, the supplier of material from which it was in part manufactured, and the individual defendants doing business under the firm name and style of E. F. Timme & Son, as factor and selling agent for said Woonsocket Falls Mill, with negligence in the manufacture and sale

of said suit. The third cause of action repeats and reiterates most of the allegations of the first and second causes of action and charges defendants with the alleged creation and maintenance of a nuisance.

The defendants E. F. Timme & Son and Woonsocket Falls Mill now move for an order dismissing the second and third causes of action of the amended complaint, on the ground that they did not accrue within the time limited by law for the commencement of an action. The defendant M. A. Henry Co., Inc., has made a similar motion. The plaintiff not only opposes the foregoing motions, but seeks leave to serve a second amended complaint, in which there is added a fourth cause of action and, by another motion subsequently served, seeks to add a fifth cause of action and to amend paragraphs 5 and 13 of the first, second, third and proposed fourth causes of action as well as paragraphs 106 and 107 of the said proposed fourth cause of action.

In view of the voluminous papers and memoranda which the respective parties to these motions have prepared and submitted, this court is of the opinion that it should depart from the ordinary practice of not examining and determining the merits or legal sufficiency of the proposed pleading upon a motion for leave to amend. The court feels justified in following the procedure which Mr. Justice KADIEN adopted in *Drumbadze* v. *Agency of Canadian Car & Foundry Co.* ('38 N. Y. S. 2d 991, 995, affd. *sub nom. Gurge* v. *Agency of Can. Car & Foundry Co.,* 267 App. Div. 782) where, upon the defendant's motion for summary judgment, the plaintiff cross-moved for leave to amend his complaint so as to set forth two additional causes of action.

The proposed fourth cause of action seeks to impose liability for exemplary damages upon all of the defendants for the conscious pain and suffering of plaintiff's intestate which, it is claimed, resulted from willful, wanton, malicious and unlawful misconduct of said defendants.

The proposed fifth cause of action is based on negligence and seeks damages for wrongful death only from the defendant Woonsocket Falls Mill, which was the manufacturer of the high pile cellulose rayon fabric — a component part of the " Gene Autry " suit here involved. As already pointed out, the plaintiff's intestate died on March 28, 1945, as the result of injuries sustained by him on December 27, 1944. Plaintiff was appointed administrator on March 5, 1948, and process was served upon the defendant Woonsocket Falls Mill on March 16, 1948. Plain-

tiff contends, however, that the Statute of Limitations has not run against said defendant for the reason that it was a foreign corporation which had neither been licensed nor actually did business within the State of New York so as to bring it within the jurisdiction of its courts.

While conceding that process was served upon the said defendant, which thereafter appeared in the action, plaintiff contends that such appearance was voluntary and that said defendant served its notice of appearance without being aware of the character of the action, since no complaint accompanied the summons, and that it made no motion to vacate the service thereof. In support of his claim that said defendant had not and was not doing business within the State of New York and that, therefore, the Statute of Limitations had not run against the proposed fifth cause of action or, indeed, any cause of action that the plaintiff may allege against it, plaintiff's counsel has submitted certain extracts of testimony from the record in a similar case against the same defendants in the Supreme Court, New York County, in which the defendant Woonsocket Falls Mill contested the service of process claiming that it was not doing business within the State of New York and was not subject to the jurisdiction of its courts. It appears, however, that upon the evidence there adduced there was a determination that this defendant had conducted business within the State with sufficient regularity to justify the service of process and, consequently, the motion to vacate such service was denied. Another case referred to by plaintiff's counsel was one in the United States Court for the Southern District of New York. That case dealt, however, with venue rather than jurisdiction.

In any event, upon the proofs submitted by the defendant Woonsocket Falls Mill, in opposition to the assertion of the proposed fifth cause of action, the court is of the opinion that this defendant was doing business within the State of New York sufficient to bring it within the jurisdiction of its courts, and that a contest of such jurisdiction in this case would have ended in failure, as it did in the case in New York County. Under these circumstances it would be futile to permit the fifth cause of action to be added at this time since it clearly is barred by the Statute of Limitations. The motion with respect thereto is accordingly denied, as is also the request for leave to amend paragraphs 5 and 13 of the first, second, third and proposed fourth causes of action inasmuch as the changes sought therein are unnecessary in light of the foregoing views.

The opposition to plaintiff's motion for leave to add the fourth cause of action is based principally on the claim that it is only a repetition of the third cause of action and its inclusion would accomplish nothing but confusion since it contains 153 paragraphs (91 to 243) besides paragraphs 1 to 26 and 33 to 37 of the first cause of action and paragraphs 57 to 78 and 81 to 85 of the third cause of action, which have been realleged by reference; that many of the added allegations do not meet the test of proper pleading (Civ. Prac. Act, § 241) and could not survive a motion to strike out pursuant to rule 103 of the Rules of Civil Practice; and that in any event the Statute of Limitations would bar this cause of action.

In view of the foregoing claims, it will be necessary to consider at this time the defendants' motion to dismiss the second and third causes of action upon the ground that both are outlawed by the Statute of Limitations.

As has already been stated the second cause of action is in negligence. While an infant injured in an accident has the right to delay any action to recover damages until one year after he has attained the age of twenty-one years (Civ. Prac. Act, § 60), such disability is removed upon the death of the infant, and from that time on the right to maintain an action for personal injuries sustained by him rests with the administrator, who must bring the action either within three years from the date the injuries were sustained or within one year after the cessation of the infant's disability on his death, whichever is the longer period. (*Duffy* v. *E. I. DuPont de Nemours & Co.,* 193 Misc. 175, affd. 274 App. Div. 908, leave to appeal denied 299 N. Y. 798.) In the case at bar the defendants M. A. Henry Co., Inc., and William E. Roschen, one of the partners of E. F. Timme & Son, were served with process on March 12, 1948, and the defendant Woonsocket Falls Mill on March 16, 1948 — too late under either period of limitation. Plaintiff's counsel seems to concede that the second cause of action is barred as to the defendant M. A. Henry Co., Inc., but urges that as to the other moving defendants the statute was suspended on the grounds urged by him in support of his motion for leave to add the fifth cause of action. There is no merit to this contention as the court has already pointed out. It follows that the motion to dismiss the second cause of action because of the bar of the Statute of Limitations must be granted.

To discuss intelligently the questions presented, it is necessary to consider in some detail the forty-three paragraphs which, together with thirty-two of the thirty-nine paragraphs of the first cause of action, repeated by reference, constitute

the third cause of action, the substance of which is as follows: that all of the defendants knew that "Gene Autry" suits would likely be worn by children who might stand near fires; that the suit herein involved and all such suits were purposely designed, manufactured and placed before the purchasing public so that they would resemble attire worn by cowboys, particularly "the well known Gene Autry himself"; that the chaps and pants of such suits were cut long, full and with a wide stiff flair which extended below the ankles of the wearers and were more than half covered with closely woven pile of heavy rayon, fur-resembling fibre, which was specifically woven for said suits after consultation, conference and agreement among the defendants; that all of such "Gene Autry" suits "were made of highly dangerous, inflammable, combustible, volatile and explosive materials" and "were of such a character that when [they] were exposed to fire, [they] would ignite in intense and sudden flashes of fire which would and did instantaneously burn, consume and destroy all of such materials * * * so rapidly, so explosively and so destructively that no opportunity was or could be afforded to anyone to stop or extinguish said fire, or to prevent or arrest its spreading, or to prevent the immediate consumption and destruction of such fur resembling materials * * * or to prevent the inevitable serious injury and possible death to anyone wearing such suit at that time * * * *"; that such suits and particularly the chaps and pants thereof were "fire traps in and of themselves when placed upon the body and worn by children of tender years for whom they were especially and expressly designed, created, manufactured and sold" by the defendants, knowing that children of tender years would wear them as articles of clothing and be attracted to them by reason of their resembling clothes worn by Gene Autry, "with no knowledge, and no suspicion and no intimation and no thought of and no warning to him or his parents of the dangers to which the child wearer was being exposed by such fur resembling material on such suits"; that the defendants placed and caused and permitted to be placed and sold upon the market throughout the country, for human use, such "Gene Autry" suits as articles of clothing, with knowledge of the inflammable character thereof; that more than one hundred fifty children have been severely burned and suffered severe and painful injuries as the result of wearing such "Gene Autry" suits, and more than one hundred fifty claims have been made against the defendants or some of them and many retailers as the result of such injuries, of which from three to

ten were for death directly attributable to burns received while wearing such suits; that by reason of the large number of such accidents and the number of claims filed as a result thereof, the defendants and each of them " have had notice and knowledge and proof that such Gene Autry suits were fire traps, nuisances and a menace to the life, body, person and security of anyone wearing the same including " the plaintiff's intestate, who, while wearing one of such suits, purchased by his mother, was burned when it caught fire while he was standing near a bonfire, and became ignited and the chaps and pants thereof were instantaneously destroyed causing him severe injuries from which he died on March 28, 1945.

The foregoing is but a summary of the lengthy, repetitious and in many instances conclusory statements contained in the third cause of action. But, we are not concerned here with the form of pleading or whether parts thereof could be stricken, had a motion been made pursuant to rule 103 of the Rules of Civil Practice, nor are we concerned with the legal sufficiency of this cause of action, inasmuch as the defendants have not challenged it pursuant to subdivision 5 of rule 106 of the Rules of Civil Practice. Their motion is solely under subdivision 6 of Rule 107 of the Rules of Civil Practice, " That the cause of action did not accrue within the time limited by law for the commencement of an action thereon." Upon such a motion we must assume the truth of the allegations contained in this cause of action (*Loehr* v. *East Side Omnibus Corp.*, 259 App. Div. 200), and the affidavits and other proof which have been submitted by the respective parties may not be used for the purpose of establishing the legal insufficiency of said cause of action. They may be used only for the purpose of reaching the objection specified in the notice of motion (*Squier* v. *Houghton*, 131 Misc. 129).

The defendants contend that the third cause of action does not establish any nuisance as to which the six-year Statute of Limitations (Civ. Prac. Act, § 48, subd. 3) would apply, and that even if a cause of action in nuisance were sufficiently and properly alleged, it would still sound essentially in negligence and would under the *Duffy* decision (*supra*) be barred by the three-year Statute of Limitations. Since for the reasons already stated, the legal sufficiency of the third cause of action is not presented by the defendants' motions, it can be examined only, whether broadly speaking the plaintiff has laid the foundation therein for a cause of action in nuisance, and, if so, is it barred by the applicable Statute of Limitations.

In approaching the solution to this problem, it may be well to draw attention to the fact that our courts have permitted recovery of substantial damages as the result of similar accidents involving burns received by children wearing so-called Gene Autry suits identical to the one worn by plaintiff's intestate, when such actions were *timely* brought, i.e., *McCormack* v. *M. A. Henry Co., Inc.* (275 App. Div. 758). The unfortunate delay in the present case has been the cause for plaintiff's attempt to invoke theories of tort liability which would render *this* action timely. We cannot, however, allow sympathy and the exigencies of a particular case to give the Statute of Limitations any effect other than that which the Legislature intended it should have. The controlling statute in this, as in any other case is " a declaration of public policy governing the right to litigate; it came into our law by way of the Legislature, not through the judicial process " (*Gregoire* v. *G. P. Putnam's Sons,* 298 N. Y. 119, 125). " At times, it may bar the assertion of a just claim. Then its application causes hardship. The Legislature has found that such occasional hardship is outweighed by the advantage of outlawing stale claims " (*Schmidt* v. *Merchants Despatch Transp. Co.,* 270 N. Y. 287, 302). But the Statute of Limitations " is not open to discretionary change by the courts, no matter how compelling the circumstances " (*Arnold* v. *Mayal Realty Co.,* 299 N. Y. 57, 60).

The authorities have divided the term " nuisance " into two categories, viz.: private nuisance and public nuisance. The essence of a private nuisance is "interference with the use or enjoyment of land " (Prosser on Torts, 1941, p. 573). Upon no aspect of the facts alleged in the third cause of action can it be said that a private nuisance has there been charged. No rights to land nor their enjoyment or impairment are involved. The nuisance, if any, must, therefore, be in the category of " public nuisance " concerning which Prosser, in his work on the law of torts, states at page 569 as follows: " At common law, a public nuisance was always a crime, and punishable as such. In the United States, nearly all jurisdictions have enacted broad criminal statutes covering such nuisances without attempting to define them, or with at most a very general definition. Such statutes commonly are construed to include anything which would have been a public nuisance at common law. In addition there are in nearly every state a multitude of specific provisions declaring that certain things * * * are public nuisances."

Subdivisions 1 and 4 of section 1530 of the Penal Law have codified acts which at common law were considered a public nuisance and a crime. Said section reads, in part, as follows: " A ' public nuisance ' is a crime against the order and economy of the state, and consists in unlawfully doing an act, or omitting to perform a duty, which act or omission: 1. Annoys, injures or endangers the comfort, repose, health or safety of any considerable number of persons; or, * * * 4. In any way renders a considerable number of persons insecure in life, or the use of property." The Restatement of the Law of Torts (Vol. 4, Ch. 40, pp. 216–218) defines a public nuisance as " an offense against the State, and as such is subject to abatement or indictment on the motion of the proper governmental agency. * * * A public nuisance may arise from an interference with the use by the public of a public place, such as a highway, navigable river, or park, the privilege to use which is given by the State or a municipal subdivision. Other acts and omissions may be found to be public nuisances at common law or declared to be such by statute. * * * A private action may, however, arise out of a public nuisance, and such must be distinguished from private nuisance. * * * When an individual suffers special damage from a public nuisance, he may maintain an action. * * * Thus, a person who suffers bodily harm from an obstruction of a highway may maintain an action therefor, although no property rights or privileges of his have been invaded. So, also, one who suffers bodily harm as the result of the keeping of explosives in a locality where their presence is declared by statute, or found in a judicial proceeding, to be a public nuisance, may recover therefor, although he has no property rights or privileges."

From the foregoing and from decisions dealing with common-law nuisance, it seems clear that, only when a person makes use of his property in such a way that harm to many is probable or certain, nuisance may be said to exist. (*Pritchard* v. *Edison El. Illuminating Co.*, 92 App. Div. 178, affd. 179 N. Y. 364.) In *United States* v. *Cohen* (268 F. 420, 422) the court said: "Generally, at common law, a nuisance is a wrong arising from an unreasonable or unlawful use of a house, premises, place, or property, to the discomfort, annoyance, inconvenience, or damage of another."

Here, however, the defendants are charged only with having manufactured and sold a child's cowboy suit which included inflammable chaps of pile rayon, without warning the purchasers or ultimate wearers of such suits of danger from con-

tact with fire or flame. In determining whether this is nuisance or negligence, the distinction between the two is important. As was stated in *Glover* v. *Holbrook, Cabot & Rollins Corp.* (189 App. Div. 328, 329): " Nuisance consists in the wrongful maintenance of the thing itself, while negligence usually consists in the manner of doing the thing. In nuisance, it is the wrongful or unlawful maintenance of the thing resulting in damage to others that gives the right of action, irrespective of whether its operation was careful or careless; while in negligence, it is the careless operation of the thing whereby others are damaged, irrespective of whether it is lawful or unlawful. Therefore, that the defendant exercised due care in maintaining the nuisance would be no defense, while that it was lawfully maintained would be. That the defendant observed due care would be a defense in an action predicated upon negligence, but that he was lawfully authorized to operate the thing would be no defense."

Bearing in mind the above distinctions, it cannot be said that the acts with which the defendants are charged amounted to nuisance. At most they involved a failure to treat properly the material or to warn the purchaser or wearer of the child's suit of its inflammable nature. This was negligence and not nuisance, however otherwise described in the cause of action under consideration. Therefore, the three-year Statute of Limitations applied, and since the action was brought more than three years after the injuries were sustained, and more than one year since the infant's death, the cause of action is barred under the *Duffy* case (*supra*).

Assuming *arguendo* that the third cause of action sounds in nuisance, it, nevertheless, arose out of the negligence of the defendants in manufacturing and selling the cowboy suits which included material that was dangerous for its intended use as wearing apparel for young children, and in not warning the ultimate purchasers or users of the garments of the danger. There was nothing unlawful in manufacturing the inflammable rayon or using it under proper conditions. It is the negligent use of this rayon of which the plaintiff complains, precisely as he might complain of any other lawful commodity which might be converted into a source of danger by the manner in which it was used (*Giannavola* v. *Gen. Ry. Signal Co.*, 244 App. Div. 65; *Pine* v. *Waterbury Clock Co.*, 245 App. Div. 605). In determining which period of limitation applies to a particular cause of action, the criterion is the " nature and origin of the liability asserted " (*Schmidt* v. *Merchants Despatch Transp.*

*Co.*, 270 N. Y. 287, 299, *supra*). Since negligence is the origin of the liability asserted in this cause of action, the three-year Statute of Limitations governing negligence must be applied. See the *Duffy* case (*supra*).

The fourth cause of action which the plaintiff seeks to add by way of amendment, is largely, as the defendants contend, a repetition of the third cause of action. The only notable difference is the addition of allegations embracing a claim of exemplary or punitive damages because of the alleged "wilful and malicious conduct of the defendants." Aside from the fact that in no aspect of this proposed cause of action may it be said that the defendants had a malicious purpose to do intentional harm to a human being in manufacturing and selling the cowboy suits in question, it seems clear, beyond a doubt, that punitive damages cannot be awarded for pain and suffering prior to death, as section 119 of the Decedent Estate Law expressly states, in part, " but punitive damages shall not be awarded nor penalties adjudged in any such action brought to recover damages for personal injury." That being so, the addition of the fourth cause of action would be an idle gesture and would serve only to delay the ultimate disposition of this unfortunate case and necessitate the further expenditure of time and effort involved in numerous practice motions.

It follows that the plaintiff's motions for leave to add fourth and fifth causes of action are denied, and the motions of the defendants to dismiss the second and third causes of action are granted.

Settle orders on notice.