GARY LICHTMAN et al., Appellants, v BEVERLY NADLER, Respondent.

Fourth Department, April 8, 1980

## APPEARANCES OF COUNSEL

*Kavinoky, Cook, Sandler, Gardner, Wisbaum & Lipman (K. Michael Sawicki* of counsel), for appellants.

*Miles, Cochrane, Grosse, Rossetti & Chelus* and *Heimerl, Kennan & Stiller (Raymond Miles, III,* of counsel), for respondent.

## OPINION OF THE COURT

HANCOCK, JR., J.

■ Plaintiffs' appeal presents a well-defined legal issue: whether owners of residential property in an urban area have a cause of action for private nuisance based on harmful consequences to their property due to mosquitoes and unpleasant odors coming from the natural accumulation of stagnant water on adjoining land. In our opinion, Special Term properly granted summary judgment and dismissed the plaintiffs' complaint invoking the established common-law rule that a landowner is under no affirmative duty to remedy conditions of purely natural origin upon his land even though they are dangerous or inconvenient to his neighbors (see Prosser, Torts [4th ed], § 57, p 354; Restatement, Torts 2d, § 840, subd [1]; 66 CJS, Nuisances, § 8; *Merriam v McConnell,* 31 Ill App 2d 241).[1] We find nothing in the case law or in the texts supporting the dissenters' view that the traditional rule has been altered or that any exception has been made in this jurisdiction as to its application in urban or suburban areas.[2] Moreover, there is no evidence in the record from which it could be

---

1. In *Merriam v McConnell* (31 Ill App 2d 241, 246), the court quoted from 1 Wood, Nuisances [3d ed, 1893], pp 148-149): " 'In order to create a *legal* nuisance, *the act of man* must have contributed to its existence. Ill results, however extensive or serious, that flow from natural causes, cannot become a nuisance, even though the person upon whose premises the cause exists could remove it with little trouble and expense. * * * Thus it will be seen that a nuisance cannot arise from the neglect of one to remove that which exists or arises from purely natural causes. But, when the result is traceable to artificial causes, or where the hand of man has, in any essential measure, contributed thereto, the person committing the wrongful act cannot excuse himself from liability upon the ground that natural causes conspired with his act to produce the ill results.' "

2. On the contrary, in *Vanderwiele v Taylor* (65 NY 341, 346), the Court of Appeals stated that: "even in a city there is no principle of the common law which requires one lot owner to improve or drain his lot for the benefit of another. So long as he leaves it in its natural condition, his neighbors cannot complain of the flow of the surface water. * * * If the surface water on any lot is a real nuisance, there is ample power in the city authorities, for the purposes of health or public convenience, to abate it."

The dissenters cite the statement by Professor Prosser that "[t]here are indications

concluded that defendant's conduct was either negligent or intentional, a necessary predicate for the common-law action in private nuisance (see *Copart Inds. v Consolidated Edison Co. of N. Y.,* 41 NY2d 564; see, e.g., *Merriam v McConnell, supra,* p 245).

The dissenters find, alternatively, that the conditions on defendant's property could constitute a public nuisance "per se" by reason of subdivision 2 of section 1500 of the Public Health Law and that because those conditions allegedly cause "special injury" to plaintiffs' land, plaintiffs have an action in law or in equity based on private nuisance.

We do not agree that the Public Health Law may be construed so as to give rise to a cause of action for private nuisance upon the allegation that an accumulation of water on defendant's land is a breeding place for mosquitoes which, by operation of the statute, constitutes a nuisance "per se". The declaration in subdivision 2 of section 1500 of the Public Health Law that any "accumulation of water in which mosquitoes are breeding, or are likely to breed, is hereby declared to be a nuisance" is contained in title I of article 15 of the Public Health Law, entitled "Municipal Insect Control", the purpose of which is to vest municipal authorities with power to remove or suppress breeding places for mosquitoes. Title I provides that whenever *"the board of health of a municipality shall determine* that any accumulation of water wherein mosquito larvae breed, *constitutes a nuisance or a danger or injury to life or health,* the owner or owners of the premises on which the breeding place is located shall bear the expense of its suppression or removal, or so much thereof as the local board of health shall determine to be equitable" (Public Health Law, § 1501, subd 1; emphasis added). Section 1501 establishes procedures for the equitable apportionment between the property owner and the municipality of the cost of

---

that a different rule is developing as to urban centers." (Prosser, Torts [4th ed], § 57, p 355.) The only illustrations given, however, are cases of dangerous trees where the danger from trees falling into streets or upon neighbor's yards or structures is obviously greater in more densely populated urban areas. The Restatement (Second) of Torts recognizes this exception (see Restatement, Torts 2d, § 840, subd [2]) and notes that the exception to the common-law rule "has developed for trees in an urban area falling on a public highway and causing physical harm to travelers on the highway". (Restatement, Torts 2d, § 840, subd [2], Comment *c.)* It would seem that the conditions complained of by plaintiff, i.e., mosquitoes, foul odors, noxious plants, and water flowage, do not approach the degree of danger to passersby or nearby structures posed by dead or decayed trees which are ready to fall.

abating the declared breeding grounds (Public Health Law, § 1501, subds 1, 2, 3), and also provides that if the property owner does not proceed to suppress or remove the condition the board of health may do so and charge such portion of the expense thereof to the owner as the board of health shall determine to be fair (Public Health Law, § 1501, subd 4). It is evident that title I of article 15 neither makes it incumbent upon the property owner to eliminate the mosquito breeding grounds nor gives the local board of health the right to do so at the owner's expense unless the board of health has first determined under subdivision 1 of section 1501 that the condition constitutes "a nuisance or a danger or injury to life or health".

██ That the declaration in subdivision 2 of section 1500 of the Public Health Law can be interpreted as giving private citizens a right to sue at law or in equity to compel the defendant to remove or suppress the objected-to condition when no determination of nuisance required for action by the public health authorities has been made is, in our view, a reading of the statute which results in an anomaly and which is inconsistent with the legislative scheme of article 15. Such construction is to be avoided (see McKinney's Cons Laws of NY, Book 1, Statutes, §§ 94, 97, 98, 141). Moreover, the dissenters' interpretation of section 1500 as creating a cause of action for private nuisance where none exists at common law is, to say the least, an expansive reading of the statute and contrary to the accepted rule that a statute in derogation of the common law must be strictly construed (see McKinney's Cons Laws of NY, Book 1, Statutes, § 301; *Matter of Bayswater Health Related Facility v Karagheuzoff*, 37 NY2d 408, 414).

In our opinion, the prevailing case law mandates summary judgment and dismissal of the complaint which would not, of course, be a bar to a new action based on affirmative conduct of defendant.

The order should be affirmed.

SCHNEPP, J. (dissenting). The majority perpetuates an outdated and outmoded rule which insulates all landowners from liability in nuisance for conditions arising from natural causes. We are compelled to dissent.

The parties own adjoining lots on Crestwood Lane in a residential subdivision known as "Forest Heights Estates"

situate in the Town of Amherst, New York. Plaintiffs, Gary and Marsha Lichtman, claim that the manner in which the defendant, Beverly Nadler, maintains her land constitutes a nuisance which interferes with the use and enjoyment of their property on which they have erected their home. They allege that stagnant waters on defendant's vacant lot produce foul odors, constitute a breeding ground for mosquitoes and from time to time spill over and flood a portion of plaintiffs' premises; that poisonous plants are permitted to grow wild; and that plaintiffs are annoyed and harassed by large numbers of mosquitoes and other pests and by offensive odors. Plaintiffs instituted this action seeking permanent injunctive relief, including a mandatory injunction to compel defendant to make improvements to her land, and damages for the diminution in value of their real property. They allege that defendant's "negligent and/or willful failure to remedy the conditions upon her property * * * constitute[s] * * * a nuisance".

On her motion for summary judgment defendant admitted that the land was without permanent drainage and was overgrown with trees and wild plant life, but claimed that the lot is in its natural and unimproved state and that these conditions do not, in any event, constitute a nuisance. Special Term in granting defendant's motion relied heavily upon the general rule that owners of undeveloped land have no special duty to regulate the flow of surface water from their land onto a neighbor's premises (see *Davis v Niagara Falls Tower Co.,* 171 NY 336; *Vanderwiele v Taylor,* 65 NY 341). Quoting from *Vanderwiele v Taylor (supra,* p 347) the court found that the defendant was not required " 'so to improve [her] lot that [her] neighbor can make the most advantageous use of his, or be protected against its natural disadvantages' ".

The focal issue framed on this appeal is whether defendant's alleged "negligence and/or willful failure" to remedy the conditions complained of on her unimproved property constitutes an actionable nuisance. Plaintiffs claim that defendant's maintenance of her property interferes with the use and enjoyment of their premises and constitutes a private nuisance, as well as a nuisance per se under the provisions of the Public Health Law (Public Health Law, § 1500, subd 2; §§ 1320, 1321). Plaintiffs maintain that Special Term erred in dismissing this cause of action as a matter of law because material questions of fact were presented as to the nature,

extent, duration and effect of the conditions extant on defendant's property and the reasonableness of defendant's use of her property as it affects others.

The defendant maintains on this appeal, as she did at Special Term, (1) that she has no obligation to eliminate the alleged nuisance (for which she was put on notice by the town authorities) because she may not be compelled to improve or drain her lot to prevent the flow of surface waters from her premises so long as her property is in its natural condition, (2) that she is under no duty to eradicate alleged breeding grounds for mosquitoes or to destroy noxious weeds which are the natural growth of the soil if the land remains unimproved, and (3) that the Public Health Law provisions confer no right of action on private landowners.

Two distinct bases of tort liability emerge from plaintiffs' claims: (1) private nuisance, and (2) public nuisance. While the term nuisance can be generally defined as "[a] source of inconvenience, annoyance, or vexation" (American Heritage Dictionary, p 900), public and private nuisances "have almost nothing in common" (Prosser, Torts [4th ed], § 86, p 573). In *Copart Inds. v Consolidated Edison Co. of N. Y.* (41 NY2d 564, 568), the Court of Appeals described the differences between these torts: "A private nuisance threatens one person or a relatively few *(McFarlane v City of Niagara Falls,* 247 NY 340, 344), an essential feature being an interference with the use or enjoyment of land *(Blessington v McCrory Stores Corp.,* 198 Misc 291, 299, affd 279 App Div 806, affd 305 NY 140). It is actionable by the individual person or persons whose rights have been disturbed (Restatement, Torts, notes preceding § 822, p 217). A public, or as sometimes termed a common, nuisance is an offense against the State and is subject to abatement or prosecution on application of the proper governmental agency (Restatement, Torts, notes preceding § 822, p 217; see Penal Law, § 240.45). It consists of conduct or omissions which offend, interfere with or cause damage to the public in the exercise of rights common to all *(New York Trap Rock Corp. v Town of Clarkston,* 299 NY 77, 80), in a manner such as to offend public morals, interfere with use by the public of a public place or endanger or injure the property, health, safety or comfort of a considerable number of persons *(Melker v City of New York,* 190 NY 481, 488; Restatement, Torts, notes preceding § 822, p 217)." (See, also, Restatement, Torts 2d, §§ 821B, 821D.)

One is subject to liability for a private nuisance "if his conduct is a legal cause of the invasion of the interest in the private use and enjoyment of land and such invasion is (1) intentional and unreasonable, (2) negligent or reckless, or (3) actionable under the rules governing liability for abnormally dangerous conditions or activities" *(Copart Inds. v Consolidated Edison Co. of N. Y., supra,* p 569). Whether one is liable for a private nuisance requires consideration of a multitude of factors, including time, place, manner of activities or conditions, cost, utility of the community, ease of correction, danger of health and other societal interests (see *McCarty v National Carbonic Gas Co.,* 189 NY 40; see, generally, Restatement, Torts 2d, §§ 827-831).

The majority's position, that a landowner has no duty to remedy conditions of a purely natural origin on his land, does find support in the Restatement (Second) of Torts: "[A] possessor of land is not liable to persons outside the land for a nuisance resulting solely from a natural condition of the land" (Restatement, Torts 2d, § 840, subd [1]). Professor Prosser also recognizes that the traditional rule of both the English and the American courts is that a possessor of land has no affirmative duty to those outside of his premises to remedy purely natural conditions on his land, although they may be highly dangerous or inconvenient to his neighbors (Prosser, Torts [4th ed], § 57, p 354). However, he points out that this rule of nonliability "was obviously a practical necessity in the early days, when land was very largely in a primitive state * * * [b]ut it is scarcely suited to cities, to say that a landowner may escape all liability for serious damage to his neighbors, merely by allowing nature to take its course. There are indications that a different rule is developing as to urban centers" (Prosser, Torts [4th ed], § 57, p 355). Although the Restatement's view is adopted by the majority of this panel, we point out that this "traditional rule" does not bear the imprimatur of a legislative enactment, and contend that it must give way to practical considerations.

In these modern days no reason exists to exempt a landowner from liability for a nuisance existing on his property in a developed residential area. The practical considerations which support the insulation of landowners from liability for nuisances created by nature do not exist in an urban setting. First of all, an urban landowner's holdings are usually small and limited in acreage, in contrast to a rural landowner's

estate which may include a farm or other large parcel of realty. Thus, the inspection of urban property is no great burden and the cost of rectifying any nuisance present is not likely to be disproportionate to the value of the property. Secondly, certain unpleasant conditions (e.g., offensive odors) which may cause little concern in isolated rural areas, where residences are usually situated far apart, would be an annoyance in more densely populated areas. Not only will a nuisance in a thickly settled area have a more intense impact on a neighbor (by virtue of its proximity), but, also, it is likely to offend more people. Finally, the purchaser of a subdivided lot anticipates that others will build residences on their neighboring lots and that he will be expected not to interfere with the use or enjoyment of their land. For these and other reasons, landowners in developed residential areas should not be permitted by doing nothing intentionally to interfere unreasonably with the use and enjoyment of their neighbor's property and claim an exemption from liability for nuisance because they permit their land to remain in an undeveloped state.

Whether the offending parcel is in a sufficiently developed area to merit court-imposed sanctions is a question of fact. As noted above, several factors including the nature of the locality, the seriousness of the offending condition, and the ease with which it may be prevented should be considered in determining liability under these circumstances. Thus, we conclude that plaintiffs have alleged a cause of action for a private nuisance and have submitted proofs establishing issues of fact which merit a trial.*

Plaintiffs also maintain that the conditions on defendant's property constitute a "nuisance per se" by reason of subdivision 2 of section 1500 of the Public Health law which provides as follows: "Any accumulation of water in which mosquitoes are breeding, or are likely to breed, is hereby declared to be a nuisance." Plaintiffs also point to sections 1320 and 1321 of the Public Health Law which provide that "[when any] plant or growth which is noxious or detrimental to the public health * * * the local board of health * * * may take * * * sufficient proof to authorize a declaration that the existence of any such growth is a nuisance or danger to the public health, and may

---

* The majority holds that "there is no evidence in the record from which it could be concluded that defendant's conduct was either negligent or intentional". We contend that the record establishes the existence of a question of fact as to whether defendant's *nonfeasance* was negligent or intentional.

* * * order the same to be * * * abated on any property wherever found" (§ 1320, subd 1) and "[i]f any such order is not complied with * * * may enter upon any such property and remove and destroy [the offending plants or growth]" (§ 1321, subd 2).

In section 1500, the Legislature has specifically declared that a certain condition on private property constitutes a public nuisance. This statute removes any immunity which the defendant may otherwise claim by reason of the natural condition of her land. Thus, even if defendant's proofs establish her entitlement to nonliability under the common-law rule, the provisions of the Public Health Law countermand the rule's application (cf. *Wight v State of New York,* 93 Misc 2d 560, 564).

A public nuisance gives rise to no action at law or equity by one who suffers an injury common to the public unless there is a "special injury" to the personal or land rights of the individual *(Copart Inds. v Consolidated Edison Co. of N. Y.,* 41 NY2d 564, 568, *supra; Van Cortlandt v New York Cent. R. R. Co.,* 265 NY 249, 262; see, generally, Rothstein, Private Action for Public Nuisance: The Standing Problem, 76 W Va L Rev 453; Prosser, Private Action for Public Nuisance, 52 Va L Rev 997; Reynolds, Public Nuisance: A Crime In Tort Law, 31 Okla L Rev 318). To have standing to sue, the private individual must show that he has sustained damage of a special character, distinct and different from the injury suffered by the public generally *(Ackerman v True,* 175 NY 353, 360-361; see, generally, 42 NY Jur, Nuisances, § 52). As Justice BREITEL wrote in *Graceland Corp. v Consolidated Laundries Corp.* (7 AD2d 89, 91, affd 6 NY2d 900): "In the absence of special damage to another, [a] public nuisance is subject only to correction at the hands of public authority. It is equally clear, however, that one who suffers damage or injury, beyond that of the general inconvenience to the public at large, may recover for such nuisance in damages or obtain injunction to prevent its continuance" (see, also, Prosser, Torts [4th ed], § 88, pp 586-591).

Plaintiffs claim that "the stench and offensive odors [and] the large number of mosquitoes and other pests which travel from the Defendant's premises * * * continually annoy and harass the Plaintiffs and their family"; that "certain portions of [their yard] are covered from time to time by waters overflowing from the Defendant's premises"; that "[p]laintiffs'

grass and landscaping [have] been damaged by such water"; that they are "unable to use their rear and side yards during broad daylight due to the large numbers of bugs and mosquitoes [and] the offensive and foul-smelling odors"; that they "are unable to utilize their premises to their full value"; and that "their home has been lessened in value". By alleging substantial interference with their use and enjoyment of their land, plaintiffs claim a special injury, which vests them with standing to abate the public nuisance described in section 1500 of the Public Health Law (Prosser, Torts [4th ed], § 88). There is no difficulty here in discerning a claim that there has been a substantial interference with the plaintiffs' use and enjoyment of their land, as well as an unreasonable interference with a right common to the general public. "This makes the nuisance a private as well as a public one; and since the plaintiff does not lose his rights as a landowner merely because others suffer damage of the same kind, or even of the same degree, there is general agreement that he may proceed upon either theory, or upon *both*" (Prosser, Torts [4th ed], § 88, p 589; emphasis supplied). Plaintiffs have thus alleged special injury to their personal and land rights sufficient for standing to seek equitable relief and damages for this alleged public nuisance.

We agree with the majority's analysis as it applies to sections 1320 and 1321 of the Public Health Law, which do not declare that a specific condition constitutes a public nuisance. These sections empower the local board of health to make an appropriate order, after it has taken proof to determine whether the condition on defendant's property is a nuisance. Plaintiffs cannot rely on these statutes to base their action for a public nuisance.

Each nuisance case, public or private, is determined on its own facts, because the determination of reasonableness is pre-eminently a question of fact and, as noted above, various factors must be weighed and balanced in arriving at this determination *(Slattery v Herbstone Realty Co.,* 233 NY 420; *Lyman v Village of Potsdam,* 228 NY 398; *McCarty v National Carbonic Gas Co.,* 189 NY 40, 46-47, *supra).* Likewise, whether plaintiffs suffered damage particular to them and not shared in common by the rest of the public is also a question of fact (see, generally, Prosser, Torts [4th ed], § 88, pp 586-591).

Plaintiffs, who allege that the conditions complained of constitute a private nuisance, are not limited in their proof or

recovery on the theory pleaded in the complaint. Plaintiffs' claims clearly establish a cause of action based on either a private nuisance or a public nuisance theory; they have alleged that the conditions on defendant's property interfere with the use and enjoyment of their land and that they have suffered harm of a different kind from that suffered by the general public. The theory of pleadings rule has been abolished and all that is necessary is that facts sufficient to make out a cause of action be asserted. "[I]t matters not whether [the pleader] gives it a wrong name. If this be true of the cause of action itself, it is certainly true of the ground underlying it" *(Diemer v Diemer,* 8 NY2d 206, 212; see, also, Siegel, New York Practice, § 209).

Accordingly, we conclude that Special Term erred in granting defendant summary judgment and dismissing plaintiffs' nuisance cause of action. There exist unresolved issues of fact upon which liability depends (see Siegel, New York Practice, § 278, p 334). We must, therefore, dissent.

CARDAMONE, J. P., and MOULE, J., concur with HANCOCK, JR., J.; SCHNEPP and DOERR, JJ., dissent and vote to reverse the order and deny the motion in an opinion by SCHNEPP, J.

Order affirmed, without costs.